I'd like to reserve three minutes for rebuttal and I'll watch the clock. I appreciate the court's focus order in this case so unless your honors would like to begin elsewhere I'll start by addressing the Brady related issues. Thank you. And I think there are three that were teed up in the court's order. So the status, finality, and jurisdiction. So as a descriptive matter, the YEPI's remand is still ongoing in the district court. So this court remanded in 2017, towards the end of 2017, for further fact-finding. The defendants requested documents in February of 2018. The government produced multiple batches of documents most recently in June of 2022, which, according to trial counsel, contained the key documents at issue for the Brady claim. The potential Brady-Gilio violation was presented in a motion for an evidence. It took the government four years to respond to the document request? Essentially your honor, they responded with multiple productions. I believe there were four. Just to be clear, I'm not trial counsel below, so this is just from my reading of the document. The initial discovery letter is at docket 4671, if your honors would like to review it. And the motion for an evidentiary hearing on the potential Brady-Gilio violation, that's at docket 5091, and it lays out the history of the back and forth on the discovery. So most recently, the government asked for an extension for its response. Response to what? The motion for an evidentiary hearing, your honor. And when was the motion asking for the hearing date? I don't have that in front of me, your honor. I think that was several months ago. I believe the hearing was supposed to occur sometime in April of this year. I guess it's fair to say, at least speaking for myself, that there's a deal of concern that five and a half years have passed. I agree, your honor. On a remand on a Brady violation. I agree, your honor. With no discernible movement on an issue that's obviously very weighty. I agree, your honor. And in addition to that, Mr. Mejia was sentenced over 16 years ago. So assuming that he were to... And were asked to make a decision about a sentencing when there's still an outstanding Brady issue that might affect that sentence? Yes, your honor. So if the conviction, let's say the conviction, you know, either, you know, the district court orders a new trial, for example, and he wasn't convicted, obviously there'd be no sentence. There are other back patterns where the sentence could be different. But yes, it would have an impact on that. But I do believe, if your honor is getting at jurisdiction, there is still jurisdiction here. This court has jurisdiction. So although the judgment below is not final in all respects, in the way that we would traditionally understand finality, the district court still had the authority to consider the First Step Act motion. And this court has jurisdiction to review that decision under 1291. Walk me through that. How did the district court have the authority to consider this motion if the judgment of conviction is not final? Okay, so the judgment's not final. I think we kind of all agree on that, so I won't belabor it. The First Step Act in Section 404, so there are a couple of potential avenues for jurisdiction. I think the most obvious one is Section 404 of the First Step Act. And the text of the act says, in Section 404B, a court that imposed a sentence for a covered offense may impose a reduced sentence. But doesn't the imposition of sentence mean that the sentence is final? Well, I think it's a matter of semantics here. I think finality has... Well, jurisdiction's not a matter of semantics, so... I agree, your honor. I didn't mean to dismiss the point. I just mean to say that finality and imposition have been distinguished in this context. So let's say, for example, if we were talking about a 2255 issue, obviously the decision would not be final for purposes of the one-year statute of limitations, right? And that's... I think the district court even recognized that. That's at 2ER 240. But this court's decisions, and even in Merrill, which is the most recent decision on the First Step Act, and that's at page 577, recognize that finality is not necessary for a First Step Act motion. Well, but for 2255 as well as for a direct appeal, there is already a final judgment in the books. That's the issue. So you can't do either one, or you can't do a 2255 until a final judgment. It's post-judgment relief by definition. So there's been full judgment. There's no dispute. You can do it. So I don't see how that applies here. Well, your honor, I think I would point this court back to 1291 and this court's decision in Carter. I don't think this was cited in the brief, so I'll give you the full citation there. That's at 44F 4th 1227. And it's a published opinion, and this court clearly held it was the context of a 404 motion that the court has jurisdiction under 1291 to review these orders. I think another potential way to get to jurisdiction is construing the district court's order as either an indicative ruling or a denial of a motion under Federal Rule of Criminal Procedure 37A2. What would be the statutory or rule basis for calling it an indicative ruling? Well, it's an alternative argument, your honor. I'm trying to make the best of it here. It's a tough argument. Let me be less subtle. I don't know of any basis for anything called an indicative ruling by the district court other than when a case is on appeal. Right, your honor. So I hear you. I hear you. Again, our initial argument is that it would be either 3231 or Section 404 of the First Step Act. But if your honors believe that there is no jurisdiction, I still think there's a path to some relief here. So one option would be to vacate and remand with instructions to the district court to essentially hold off on ruling on the First Step Act motion until the Brady issues are resolved. Can we do that if we don't have jurisdiction over this appeal? Or do we have to necessarily conclude that we have jurisdiction over this appeal in order to vacate the district court's order? Well, I think this court always has jurisdiction to assess jurisdiction. So if the problem is that the district court itself didn't have jurisdiction to hear the First Step Act motion, and therefore this court doesn't have jurisdiction, I think the court could still opine on this. And I think what the court would do in that circumstance is to say, first of all, yippees, elaborate on the judgment and mandate there. Yippees vacated the conviction and sentence. Second, Mr. Mejia's First Step Act motion essentially was not right. Oh, does this, I was going to ask you, does this require us to And I do think that's the best reading of the decision. And if I could, I'd just like to give a few reasons why. So I think the better reading is vacater. First of all, the court in yippees found that the evidence was material. So essentially what it was remanding for was litigation on the prejudice prong of the Brady standard. And the court in several passages specifically said it wanted to give the parties a chance to litigate the claims. Well, I'm not sure that I would agree with that. I think the language in yippees was asked, you know, that there were many disputed factual questions. And it was whether there was a Brady violation, whether these payments were made and what amounts and when. And so I'm not sure that I would construe the yippees as saying that there was a Brady violation. It seemed to be more of an open question, but serious, raising serious concerns. I agree, Your Honor. I meant, I'm sorry if I misspoke. I just meant to say that the court did say at page 466 to 67 of yippees that the evidence was material, not that there was an actual violation. So there's still the prejudice prong. So the other point was it wanted to give the parties a chance to litigate the claims. It wanted to give the district court a chance to engage in fact finding and evaluation. It specifically rejected the option of presenting the Brady issue through a post-conviction 2255 motion, which would have meant that it was final. And it, in its decretal language at the end in the judgment, says it affirmed as to the other issues, not as to all issues. So I think when you read all of these things together in context, in addition to this court's general practice in cases involving Brady remands, so that's in Alvarez and Coring and Bernal-Obeso, ordinarily what this court does, and it makes sense, is to vacate and remand with the possibility of reinstatement. Well, this gives me some pause because the panel knew that, they're experienced people, they knew how to say the words, and they didn't. Which suggests to me that maybe there was a departure from the typical practice as you describe it, and it was an intentional departure. It seems what you're basically saying is they were kind of asleep at the switch, my words not yours, and I'm finding that hard to to take given that this was a very carefully considered disposition. I agree, Your Honor, and I don't mean to imply or disparage. No, I understand, I understand. So I think, first of all, again, for all the reasons I gave, I think the language of the actual memorandum disposition is telling. But to Your Honor's point, sure, they didn't say vacated, but they didn't say the alternative. They could have easily said one or the other, and it was simply ambiguous. So unfortunately, mistakes happen, as we found out in the last case before this one. You know, language is omitted all the time. It happens. But I think when you look at all these factors together, the best reading and the one that's most faithful to the court's prior decision is that the UP's decision worked as a vacater. Let me ask what the implications of us deciding it your way. If we conclude that the prior remand had indeed vacated Mr. Mejia's conviction, doesn't that necessarily mean that all nine defendants' convictions were vacated, you know, who are part of that same appeal? Yes, Your Honor. Yes. Now, would that conclusion also affect other defendants that were in this very large RICO conspiracy trial as well, or no? Well, in the context of this case, I think there are, again, I don't want to misspeak because I don't represent those other defendants, but from my just general review of the docket, I think some defendants have already gotten out. Others have received some form of post-conviction relief or sentence reduction relief. So I think we're really talking about a small group of defendants left at this point for whom this may have some impact. And in addition, more broadly, I think Mr. Mejia... Well, what would be the impact, though? That's, I think, the heart of this question. There may be other individuals who could benefit from the First Step Act as well when the Brady issue is resolved, and then the court has an opportunity to either reimpose the judgment or enter a new judgment. So your view, then, is if we construe the remand in your piece as having impliedly vacated and remanded, you know, similar to the Alvarez-type remedy, the district court considers the Brady issues, and if it finds some sort of a violation, then it would order a new trial. But otherwise, it would reinstate the judgment of conviction, and this would affect the nine defendants that were on appeal in your piece. Yes. At the moment, it either enters a new judgment or reinstates the judgment. At that point, any defendant who has the possibility of asserting a First Step Act claim could do so and potentially benefit from it. But at the same time, that's not an automatic benefit, right? So as Section 404 makes clear, and we state this in our papers, the district court has wide discretion on whether or not to grant that relief. No relief is required. Presentation has to be made on the 3553A factors. And I think that just goes back to the key point here, which is that we really don't want to tie the district court's hands. I think that's the fundamental principle of both the Supreme Court's decision in Concepcion and this court's recent decision in Chen. I'm sorry. So right now, the way I read First Step Act, your client is not within the temporal period that Congress set as being an obvious candidate. Now, he'll actually benefit, won't he, if his conviction is vacated and reinstated? Because then I think the government agrees at that point he's eligible. Yes, he would be eligible under Merrill. And I think hopefully that the proceedings don't take too much longer. But I do think we have some assurances in the record that they won't. The district judge specifically said in his recent order granting the government a continuance of the briefing schedule and the hearing date that it would be the final extension for the government. And the hearing is set for September of this year. So I believe that we have at least some assurance in the record with hope that it will get resolved pretty quickly and that Mr. Mejia wouldn't be prejudiced by any further delay. You wanted some time for rebuttal? I do. If I could make one quick point, though. I wanted to finish my thought on if this court finds that there's no jurisdiction. So the first point that would need to be clarified is that the UP's judgment was vacated. In UP's, the judgment was vacated. The First Step Act motion was not ripe, meaning that the district court's denial did not work as a denial on the merits. And that if and when the Brady issues are resolved, hopefully soon, the First Step Act would automatically apply to any Let me ask you this. If we do not agree with you that the UP's panel vacated but only remanded for the Brady consideration, could we construe this appeal as a writ of mandamus that the district court improvidently reached this motion when the judgment wasn't final? I think so, Your Honor. And I think that's one option. And I think what the court would do there is again vacate and remand. And I think a slightly less drastic step that would require a little bit less supposition is just to say that there have been intervening legal and factual changes since the time of the district court's decision. At the time, the government was still arguing that this wasn't a covered offense and it took a much more narrow view of Section 401. And so I think there's reason to believe that under Carter, if the court looks at Carter at page 1229, that's also a very plausible alternative for relief here that would still preserve Mr. Mejia's ability to get some relief and potentially live a life. He's only 55 years old. I want to make that clear. He has children. If he were subject to today's sentencing laws, there's a very real possibility that he could be out and become a productive member of the community again. I see that I've gone way over. I'll give you a little more time. Thank you very much, Your Honors. Good morning, Your Honors, and may it please the court. Afiya Bondaro on behalf of the United States. I'd like to pick up with jurisdiction where you left off with my colleague. And I is not yet final. However, I do not think that that precludes this court from having jurisdiction over his appeal. In terms of the finality of his sentence, the Supreme Court has said that there is a final decision when the litigation has ended on the merits in the district court. And that's exactly what happened here in terms of the district court's denial of Mr. Mejia's First Step Act motion. Well, Ms. Bondaro, can we pick up on the point made with counsel? Doesn't the Step Act presume that there has been a final sentence in order to engage in the inquiry whether to re-sentence someone in the first place? I don't believe so in these provisions. If you compare the language of Section 404B or even 401C to the language in 403A or 401A, where it talks about convictions becoming final, I think it's clear that Congress knows how to key a provision of the First Step Act to finality. And what you see in 404B and 401C, which is really what matters here, is that the provisions just talk about the imposition of a sentence. Now, I would agree that... And you think Congress might have allowed for a provisional sentence to be considered under the First Step Act while matters of the conviction itself being reviewed by the district court? I think that... It's a hard argument, I think. And it just seems odd that the court would engage in... It's just... Talk about quintessentially putting the cart before the horse now. I think that based on the timing and that many of these offenses had to be committed before the enactment of the Fair Sentencing Act, so that was in August of 2010, many of the sentences probably are final by the time the First Step Act was passed and we're entering a Section 404B proceeding. But I don't think that the language requires that. And I think that this court would be reading a finality requirement into Section 404B if it were to hold that it didn't have jurisdiction over this appeal because Mr. Mejia's sentence is not final. What is your view as to what happened with the delay? Why has it taken five and a half years to resolve this Brady issue? Yes. My understanding is that the parties have engaged in extensive discovery in these intervening five plus years. I take it you're not involved in any of those? I am not. The trial is AUSA's. And the nine co-defendants who are subject to the Brady remand all had new counsel or have new counsel post-trial. And so my understanding is that the government reproduced all of the prior discovery and that was about 200,000 pages. So I think there's been a time, and this was before electronic discovery, so it wasn't as simple as just clicking send and redoing it. Counsel, I've had lots of cases where you have terabytes worth of documents. And yes, they take long. They don't take five years. So I guess the question is why on earth would it have taken five years? It seems to be ridiculous is the word I would use. Well, my understanding is that the parties have jointly stipulated to continue the dates in terms of holding a status conference or holding the evidentiary hearing. And all of the continuances to date before defendants finally moved earlier this year in January for a motion for evidentiary hearing, all of those continuances were joined. So all nine of the defendants and yuppies possibly might be retried if the Brady violation is found on evidence that is now, what, 20-plus years old, right? That is, that's correct. And so I think that the parties have been engaged in this process. Let me ask this. So if we agreed with opposing counsel that the yuppies remand was actually a vacating and remand consistent with our typical practice in this court, then the district court could not have reached the first step back to issue at that point, because there is no conviction pending. Would you agree with that? I agree, Your Honor. So give me your sense as to why yuppies did not vacate the defendant's convictions. I think there's a number of reasons. And I think to Judge Donato's point, the court would almost have to be assuming, as Judge Donato said, that this court was asleep at the wheel in terms of finding ambiguity in the fact that they didn't use the words vacate. They did not say that they were going to vacate the conviction. And Mr. Mejia acknowledges that there is some unevenness in this court's practice in terms of vacating and remanding for Brady issues. And that's why the government points to the Blanco case where this court didn't vacate the convictions and simply remanded for fact finding. But I mean, I will say the unevenness seems, Blanco seems to be the exception, because in all the other ones that I looked at, Alvarez, Hanna, Doe, there's a Doe case versus Doe. They all vacate. And this is not what the Ninth Circuit panel is deciding that there was a Brady violation. If there's a question of it, the typical process seemed to be to vacate and remand for further fact finding. And if the district court did not find some sort of prejudicial error, then the judgment of conviction would be reinstated. So I guess my question is, the remand doesn't say anything one way or the other. Are we precluded from reading it to imply the same kind of remedy that we've done in other cases? I think that would require, as Mr. Mejia is advocating, that this court find that it's ambiguous. And therefore, this court is going to kind of reinterpret the Decretal language. But I'd say within the opinion itself, the court noted that the question, it was remanding because it wanted the district court to determine, quote, whether Bulgarian received benefits that were undisclosed and whether Brady was violated as to each count. And so it's not as though, as in the Koren case, for example, that Mr. Mejia cites, that this court found that there was a Brady violation. And so therefore, it was vacating the conviction, as Your Honors noted. It was clearly, it's unclear. The facts were in dispute at the time. And so this court, as the Blanco court did, it said it basically took no view on what the appropriate course of action and left that for the district court to decide. I'd also like to note that the YEPA's court denied without prejudice Mr. Mejia's, one of his co-defendants' request for a reduced sentence based on the guidelines. And that's actually Mr. Mejia's brother, Mr. Jose Mejia. And Mr. Jose Mejia did just that. He's also subject to the limited remand. And he moved the district court for a sentence reduction to 3582 C2. And then he again moved the district court under the First Step Act, Section 404. And in both cases, the district court denied those motions. This court took it up on appeal. And this court ruled on those motions. This court found that it had jurisdiction under 28 U.S.C. 1291. And it ruled. It didn't say that it didn't have jurisdiction. It didn't say that the YEPA's court had vacated the convictions. And so Mr. Jose Mejia didn't have a sentence because of the Brady remand. And none of that would have happened had the convictions been vacated at the time? Correct. Because I agree with Your Honor that if the YEPA's court vacated these convictions for these nine defendants, then the district court, there was no sentence over which the district court could adjudicate a reduced sentence motion. So is it your view that no matter what the disposition of the Brady motion is, Mr. Mejia can at that point ask for first step relief? For example, if the judge denies that there's a Brady violation and then enters what would be effectively final judgment, would that be timely in the government's view under the First Step Act for Mr. Mejia to raise his concerns? To move again? Because that's when the final judgment would be entered and that would be within Congress's timeline for First Step Act, right? I don't know. If it's true that the district court jumped the gun, then first one's no harm, no foul, because it wasn't proper, right? Oh, understood. If this court were to rule that his sentence had been vacated and then the district court didn't have jurisdiction? I'm kind of keying off what the district judge does with Brady. So he has two possibilities. He can grant Brady, in which case there's no question, the convictions are vacated and whatever happens after that, if there is a conviction, first step is going to apply. You've already said that in your brief and rightly so in my view. But I'm also wondering, let's say he denies the Brady motion, says they're all perfectly fine, then at that point enters a final judgment. At that point, wouldn't Mr. Mejia be within First Step Act? Because his judgment's now entered after the enactment of the statute. Why would he be barred from asking at that point if that's when the final judgment gets entered? Because this court in Ascension has said that in terms of Section 401C, which is what really matters for him, a sentence is imposed when the district court pronounces the sentence, not when it becomes final. That was squarely the issue there because Ascension was still that this is the way that district judges, for example, me, I'll speak only for me. I shouldn't say judges, just me. We know that once we pronounce the sentence, we can't leave the bench and come back and change it. That's what that case says. So once we get off the bench and walk back, we change our mind, we can't come back and change the sentence. But that's different from being a final judgment. Correct. And that's why I'm saying I agree that Mr. Mejia's sentence is his sentence had to be final before this court ruled that he couldn't benefit from Section 401C. This court said his sentence was imposed just months before the First Step Act was enacted, but that is the bar because the district court had already pronounced the sentence. It didn't have to wait until his sentence became final. So if we agree with you that you appease did not jurisdiction of this appeal, do we have jurisdiction to hear this appeal? Yes. And that was my point in terms of the district court's denial of his motion being a final decision under 28 U.S.C. 1291 because that decision ended all litigation in terms of Mr. Mejia's sentence. So if the district court decides that there was no Brady violation, and that he's not entitled to a new trial at this point in time and at that point in time, there is no further proceedings as to his sentence. His sentence would remain the same. But let's say we disagree on this point that the let's say this panel believes that the sentence contemplated under the First Step Act has to be a final one. And and therefore, even though this matter had been remanded, it's not final because the court has not adjudicated the status of conviction. What do you think about this idea of writ of mandamus? I know I'm putting you on the spot and I if we were even contemplating it, I think we'd want to have some supplemental briefing on this issue. But what is your sense of if this panel believe that the district court jumped the gun in ruling on that motion? Your Honor, I'm not sure yet. I would I would ask for the opportunity to to file supplemental brief. That's a safe answer. That's a smart answer. Is there anything else? Yeah, I would just like to briefly note that under this court's precedent in Ascension and also in Merrill, Mr. Mejia's argument that he still has a sentence to be imposed does not does not stand and Concepcion doesn't doesn't save him. In Merrill, this court interpreted a sentence to mean a valid existing sentence. And so that's again, it's a backwards looking sort of inquiry to see when a sentence has been imposed. And so Mr. Mejia, and so that that means that Mr. Mejia, even though he has a section 404B proceeding, he already has his sentence imposed in February of 2007. And so that precludes the application of section 401C. And Concepcion allows district courts to consider non-retroactive changes, but that doesn't allow them to apply them, which is truly what Mr. Mejia needs. He needs more than a district court to just consider it because his his offense, his sentence, excuse me, is already at the statutory mandatory minimum, which is life imprisonment. Oh, one last question for me. I wanted to ask you as well. If we construe the UP's remand as having vacated Mr. Mejia's conviction, I assume you agree that that would affect all nine defendants that were on that direct appeal with him? Or the other eight defendants rather? Yes, Your Honor. And do you think, are there broader implications of that ruling beyond that particular appeal with respect to other defendants in that trial or no? I'm not sure. Yeah, I'm not sure, frankly, Your Honor, what it would mean if all of them, all of those convictions were, you know, were vacated in terms of the larger, it was a 49 defendant case originally, but not all of them proceeded to trial. And so it may be just limited to the nine co-defendants. Okay, thank you. The government would ask that this court affirm the district court's denial. Thank you. Thank you, Your Honor. Just a couple of quick points. So on 401C, my friend on the other side, I think she said it's a backward-looking inquiry. I don't think that's the government's position anymore. And I would point to a brief that the government filed in Duffy, which is a Fifth Circuit case, and that's available at 2023 Westlaw 4277311. And the government sets forth its, and I'd be happy to submit that after the fact, also happy to submit a supplemental briefing. But in that case, the government lays out its most recent position and it agrees that it's not a backwards-looking inquiry. A couple of other, I know I don't have too much time, I think I want to emphasize that there are multiple paths to relief here. And I think the reason that's important, as we've kind of discussed earlier, is that there are tremendous stakes here for Mr. Mejia. I understand the concern, the systemic concern, the concern with the other, you know, defendants who had Brady claims. But as mentioned earlier, if Mr. Mejia were sentenced today, there's no possibility of him getting a life mandatory minimum sentence for drug offenses. And yes, drug offenses are serious, of course, Your Honor. But the primary reason his sentence was escalated so high was because of prior convictions for simple possession under California law and the possession for sale of 2.8 grams of powder cocaine. So we're talking about someone who's serving a life sentence now for this, you know, the most serious type of drug crimes. He's been in prison for 16 years, he's 55 years old, and he could still live a life. So we would ask this court for relief as set forth in the briefing, Your Honor. Thank you so much. Thank you. And thank you, counsel, for your helpful arguments. The matter will stand submitted.
judges: SANCHEZ, MENDOZA, Donato